# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00054-CV

---

**SPS Austin, Inc., Appellant**

**v.**

**Chad Wilbourn, Chase Larson, Brunshae Toliver, Austin Ferraro,
and Tribe Builders, Inc., Appellees**

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-19-002667, THE HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

SPS Austin, Inc. appeals from the trial court's dismissal of its claims against appellees Chad Wilbourn, Chase Larson, Brunshae Toliver, Austin Ferraro, and Tribe Builders, Inc., and the award of attorney's fees to appellees under the Texas Citizens Participation Act (TCPA). Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. The individual appellees were employees of or independent contractors supporting SPS, and one or more of them allegedly became affiliated with Tribe after they stopped working with SPS. The trial court granted appellees' TCPA motion to dismiss SPS's claims for breach of contract, misappropriation of trade secrets, and tortious interference with existing and prospective contractual relations.

By three issues, SPS contends that the TCPA does not apply to its claims, that SPS's evidence met the TCPA's evidentiary threshold for avoiding dismissal of claims, and that the trial court abused its discretion by denying SPS's motion for limited discovery under the TCPA. We

will reverse the dismissal of SPS's claims that Tribe and Wilbourn tortiously interfered with SPS's existing and prospective contractual relationships with customers and will accordingly reverse the award of attorney's fees. We will affirm the dismissal in all other respects, and remand the cause for further proceedings on the reversed claims.

## TCPA FRAMEWORK AND STANDARD OF REVIEW

The TCPA was designed to protect both a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries that the defendant caused. *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021); *see* Tex. Civ. Prac. & Rem. Code § 27.002.[1] The TCPA establishes a three-step process to evaluate whether a legal action should be dismissed for improper infringement of protected rights. *Montelongo*, 622 S.W.3d at 295-96. Discovery is suspended until the motion is decided, but the court may allow limited relevant discovery on a showing of good cause. Tex. Civ. Prac. & Rem. Code §§ 27.003(c), .006(b). In deciding whether the TCPA applies and whether to dismiss the case, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Former Tex. Civ. Prac. & Rem. Code § 27.006(a).

---

[1] Although section 27.002 describing the TCPA's purpose was not amended in 2019, other portions were extensively amended. *See* Act of May 21, 2011 82nd Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, *amended by* Act of May 22, 2013, 83rd Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499 (affecting in relevant part Tex. Civ. Prac. & Rem. Code § 27.004), *amended by* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684, 684-687 (in relevant part amending Tex. Civ. Prac. & Rem. Code §§ 27.001(2), .003(a), .005(b)(d), .006(a), .009, .010).

This lawsuit was filed on May 15, 2019, so the version of the TCPA in force before its 2019 amendments applies. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11-12, 2019 Tex. Gen. Laws at 687, (amendments to TCPA apply "only to an action filed on or after" September 1, 2019). We will refer to relevant, applicable provisions of the TCPA that were amended in 2019 as "former Tex. Civ. Prac. & Rem.. Code § 27.___."

2

A party seeking dismissal has the initial burden of showing by a preponderance of the evidence that the non-movant's legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association. Former Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b);[2] *Montelongo*, 622 S.W.3d at 296. If the movant properly shows that the legal action has the requisite connection to one of the relevant rights, the trial court must dismiss the action unless the non-movant establishes by clear and specific evidence a prima facie case for each element of its claim. Former Tex. Civ. Prac. & Rem. Code § 27.005(b), (c); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding). If the claimant puts forth a prima facie case, the trial court must dismiss the action if the movant establishes by a preponderance of the evidence each essential element of an affirmative defense or other grounds to the nonmovant's claim. Former Tex. Civ. Prac. & Rem. Code § 27.005(d); *Coleman*, 512 S.W.3d at 898.

The term "clear and specific evidence" describes the quality of evidence required to establish a prima facie case, while the term "prima facie case" sets the "amount of evidence required to satisfy the nonmovant's minimal factual burden." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). A prima facie case will entitle a party to recover if no contrary evidence is offered. *Id*. Bare, baseless opinions do not create fact questions and are not a sufficient substitute for the clear and specific evidence required to establish a prima facie case. *Lipsky*, 460 S.W.3d at 592. Conclusory statements are not probative and will not establish a prima facie case. *Serafine*, 466 S.W.3d at 358. The trial court may consider pleadings as evidence under

---

[2] The current version of the TCPA provides that a legal action must be dismissed if the movant "demonstrates" that the action "is based on or is in response to" the exercise of protected rights or arises from any act of a party in furtherance of the party's communication or conduct described in section 27.010(b). Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b), 010(b).

the TCPA, but the plaintiff must do more than "mere notice pleading"; for pleadings to provide clear and specific evidence, the plaintiff must provide enough detail to show the factual basis for its claim. *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 190 (Tex. App.—Austin 2020, no pet.) (citing *Lipsky*, 460 S.W.3d at 590-91). Allegations alone are often not specific enough to make a prima facie case; the nonmovant must offer or produce evidence of facts to make the prima facie case. *See Montelongo*, 622 S.W.3d at 301; *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.). For example, in a defamation case that implicates the TCPA, pleadings and evidence that establish the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss. *Lipsky*, 460 S.W.3d at 591.

We review de novo whether the movant established by a preponderance of the evidence that the legal action is subject to the TCPA and whether the nonmovant presented clear and specific evidence establishing a prima facie case for each essential element of its challenged claims. *Serafine*, 466 S.W.3d at 357.

We construe the TCPA liberally to effectuate its intent of safeguarding and encouraging citizens' constitutional exercise of rights to free speech, petition, and association while protecting the right to file a meritorious lawsuit. *Coleman*, 512 S.W.3d at 898; *see* Tex. Civ. Prac. & Rem. Code §§ 27.002, .011(b).

## BACKGROUND

This dispute arises between SPS and the individual appellees—former employees and independent contractors of Mike Chang Fitness (MCF)—and Tribe, a company where SPS alleged the individual employees went to work after leaving MCF.

4

MCF sold what SPS's President Thomas Harter described as high-quality fitness products, including fitness courses, nutrition programs, and dietary supplements, primarily through online and telephonic sales. Harter stated that MCF had domain names, trademarks, service marks, and proprietary information regarding its customers, potential customers, and vendors. According to Harter, among MCF's long-time customers was Lexicon, which provides online health and wellness services. MCF's relationship with Lexicon was primarily managed by appellees Ferraro and Larson.

Appellees Ferraro, Larson, Toliver, and Wilbourn, as well as their former co-defendant Johnson Li[3] all worked for or with MCF as employees or independent contractors; in those capacities, appellees signed agreements with MCF concerning confidential information and non-competition periods after employment.[4] The MCF agreements concerning confidential information bar the employee or contractor from directly or indirectly divulging or using any confidential information outside of the contract with MCF for five years following the termination of the contract with MCF.[5]

Wilbourn ended his work with SPS in October 2017, and Tribe was formed in January 2018. Wilbourn is a director at Tribe, which is a company engaged in fitness and dietary

---

[3] Johnson Li worked at Mike Chang Fitness and is included in allegations relevant here. Claims against him were nonsuited in the trial court after the trial court granted appellees' motions to dismiss under the TCPA.

[4] The record contains such agreements formed in 2016 between MCF and each of Bull Trading Group, signed by Larson; Alpha Sales Group, Inc., signed by Wilbourn; Ferraro; and Toliver.

[5] Toliver's agreement did not set an expiration for the obligation not to disclose confidential information.

marketing and sales, including phone sales. Larson, Toliver, and Li left MCF on March 11, 2019—Larson and Toliver assert that they were escorted from the MCF premises at the instructions of MCF's chief executive officer Daniel Rose—and Ferraro left a few days later. None was working for MCF when it and SPS executed the Asset Purchase Agreement (Agreement) in April 2019.

On or about April 26, 2019, SPS and MCF executed the Agreement that encompassed MCF's proprietary information including customer data, sales data, company email accounts, and Google Drive accounts. The Agreement identifies customer lists, supplier lists, and agreements among the assets assigned. MCF assigned to SPS agreements with customers and contractors, as well as those with former and current employees that restrict competition and use of confidential information.

On May 15, 2019, SPS filed this suit against Wilbourn, Larson, Toliver, Li, Ferraro, and Tribe, alleging that the individual appellees breached their contracts with MCF that were assigned to SPS by soliciting customers, vendors, and/or employees away from MCF/SPS, and by using MCF/SPS's confidential information to do so. SPS also contends that the individual appellees misappropriated trade secrets including the confidential information subject to their agreements and that the individual appellees were using the confidential information and trade secrets to the detriment of SPS and the benefit of their new employer, Tribe. SPS further alleged that Wilbourn and Tribe, along with Li, tortiously interfered with existing contractual relations by recruiting SPS's employees to terminate their employment with SPS, disregard their post-employment obligations, and join Tribe to divert business from SPS to Tribe. Finally, SPS alleged that appellees used SPS's confidential information to interfere with prospective business relations. SPS did not allege tortious interference by Larson, Toliver, or Ferraro.

6

Appellees filed motions to dismiss under the TCPA. Appellees urged that the TCPA applies to this case because SPS's suit implicates the rights of association and free speech. They also asserted that SPS cannot establish a prima facie case for each essential element of its claims by clear and specific evidence.

SPS filed responses to the motions to dismiss attaching documentary evidence. SPS also requested that the court compel appellees to reply to discovery and that, before granting the motions to dismiss, the trial court grant time for limited discovery on any issues on which it concluded that SPS had not established a prima facie case. Appellees objected to evidence attached to SPS's response and original petition.

The trial court granted appellees' motions to dismiss under the TCPA, reserving a decision on attorney's fees. The trial court did not specify a basis for its grant of the motions to dismiss.

Subsequent filings and orders included SPS nonsuiting its claims against Li and requesting and obtaining orders overruling the objections to its evidence. SPS also requested reconsideration of the dismissal orders, expanding the scope of its claim of the commercial-speech exemption to include all claims instead of just the claim for tortious interference with business relations. The trial court then awarded attorney's fees to appellees.

**ANALYSIS**

SPS contends that the TCPA does not apply to any of its causes of action against appellees. Alternatively, it contends that it established a prima facie case as to each element of those causes against each appellee. SPS further contends that the trial court erred by denying its

7

request for limited discovery on the causes of action on which the trial court concluded that SPS had not established a prima facie case.

Under the applicable version of the TCPA, a party seeking dismissal had the initial burden of showing that the non-movant's "legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." Former Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b). The basis of a legal action is determined not by the defendant's admissions or denials but by the plaintiff's allegations. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

## I. The commercial-speech exemption applies to the tortious interference with customers claims.

SPS contends that its claims are excluded from the TCPA's scope by the commercial-speech exemption. Former Tex. Civ. Prac. & Rem. Code § 27.010(b).[6] SPS initially asserted this exemption on only its tortious-interference claims, but later asserted it concerning all claims in its motion for reconsideration. Appellees contend that the addition of the other claims at the reconsideration stage was untimely and waived the exemption. Resolving the preservation issue is unnecessary because the exemption applies only to the tortious interference claims raised against Wilbourn and Tribe, for which the motion was undisputedly timely raised.

Under the commercial-speech exemption, the TCPA does not apply to legal actions in which (1) the defendant was primarily engaged in the business of selling or leasing goods or

---

[6] This subsection was renumbered without substantive change by the 2019 amendments from subsection (b) to become subsection (a)(2) of section 27.010 of the Civil Practice and Remedies Code. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 9, 2019 Tex. Gen. Laws at 686.

services, (2) the defendant made the statement or engaged in the conduct on which the claim is based on the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018); *see also* former Tex. Civ. Prac. & Rem. Code § 27.010(b). The party asserting the exemption must establish all four elements. *RigUp,* 613 S.W.3d at 187. To determine whether a party has met its burden on the exemption's elements, we consider the pleadings and record evidence. *Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Factual allegations in a plaintiff's petition alone may be sufficient to meet the exemption's elements. *Id*. Because the exemption concerns whether the TCPA applies, SPS needs to prove that the exemption applies by a preponderance of the evidence. *Hawkins v. Fox Corp. Hous., LLC*, 606 S.W.3d 41, 46 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

SPS alleged that the individual appellees breached their contracts by taking information relating to how and to whom MCF and SPS sold its products and services. SPS alleged that it purchased the assets of MCF, which was in the business of selling high-quality fitness products, such as fitness courses, nutrition programs, and dietary supplements, primarily through on-line and telephonic sales. It also purchased proprietary information from MCF, such as identities and contact information of potential and existing customers, business partners, and vendors; customers' requirements, habits, likes and dislikes; and prices charged. But the exemption applies to statements arising out of a commercial transaction involving the kind of goods or services the defendant provides. Any of the improper taking of the sales information to

9

Tribe as alleged did not arise out of a commercial transaction of selling fitness products and related services; instead, it arose out of an employment change.

Further, the alleged misappropriation of confidential and proprietary information to use at Tribe does not fit within the exemption because there is no showing that SPS's information is a good or service that the appellees were selling—unlike, for example, the blueprints and drawings disclosed or offered for sale in *Rose*, 2019 WL 2588512, at *6. The information here allegedly included sales techniques and sales targets used to sell other goods and services.

There is also no showing that any transmission of the copied information was a commercial transaction. This contrasts with the situation in *Rose*, in which Scientific contended that Rose unlawfully disclosed the trade secrets in his personal capacity as a designer and creator of blueprints and drawings for the manufacture of specialty machines. *Id*. Rose allegedly was selling schematics which were the product that his former employer sold, whereas SPS is complaining of the misappropriation of methods and phone numbers it developed, compiled, and used to sell *other* products.

Allegations that Wilbourn and Tribe tortiously interfered with contracts by soliciting SPS employees to join Tribe do not fit the exemption because they do not arise out of a "commercial transaction" involving goods or services the appellees provide. *See Abatecola v. 2 Savages Concrete Pumping LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *9-10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). Further, they are not statements made to an audience who are actual or potential customers of the defendant for the kind of goods or services the defendant provides. *See Lara v. Streamline Ins. Servs., LLC*, No. 03-19-00474-CV, 2020 WL 7776080, at *5 (Tex. App.—Austin Dec. 31, 2020, no pet.)

10

(mem. op.) (op. on reh'g). These distinctions remove the employment-based claims from the commercial-speech exemption.

However, the claims for tortious interference with relationships with customers are within the commercial-speech exemption. *Abatecola*, 2018 WL 3118601, at *10 (exemption applies to defendant competitor's allegedly tortiously interfering statements it made to plaintiff's customers); s*ee also Lara*, 2020 WL 7776080, at *5. SPS claims that Wilbourn and Tribe were in the business of fitness and dietary supplement marketing and that they used SPS's confidential information to solicit at least one of SPS's customers who provides online health and wellness publishing services. This claim that Tribe and Wilbourn tortiously interfered with SPS's existing contractual relationships with customers is within the scope of the commercial-speech exemption to the TCPA. We sustain issue one in part, concluding that the trial court erred by dismissing these claims because they are not within the scope of the TCPA.

## II. The Covenants Not to Compete Act does not preempt the TCPA

SPS asserted that the application of the TCPA to its claims involving covenants not to compete were preempted by the Covenants Not to Compete Act (CNCA). *See* Tex. Bus. & Com. Code §§ 15.50-.52. However, courts have concluded that the TCPA and CNCA govern different aspects of the litigation process. *RigUp*, 613 S.W.3d at 186-87; *see also Reeves v. Harbor Am. Cent., Inc.*, 631 S.W.3d 299, 307 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, pet. denied). The TCPA governs early-stage dismissal based on certain statutory and constitutional criteria, while the CNCA concerns burdens of proof and remedies concerning the merits of a cause of action. *Reeves*, 631 S.W.3d at 307. Consistent with the holding in *RigUp*, we conclude that the CNCA does not preempt application of the TCPA to claims in this case.

## III. Breach of contract claims

SPS contends that the individual appellees failed to show that the TCPA applies to its breach-of-contract claims because they did not show that SPS's claims are solely based on, related to, or in response to "communications." SPS does not allege breach of contract by Tribe. SPS further urges that its claims focus on what appellees did, not what they said.

The elements of a breach-of-contract claim are (1) the existence of a valid contract between the plaintiff and defendant; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damage to the plaintiff as a result of the breach. *Barnett v. Coppell N. Tex. Ct., Ltd.*, 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. denied) (citation omitted).

### A. The TCPA applies to the breach-of-contract claims.

SPS alleged that the individual appellees entered valid contracts with MCF, that SPS is the assignee of those agreements, and that the individual appellees breached these agreements by soliciting customers, vendors, and/or employees away from SPS and by using SPS's confidential information to do so. SPS alleged that the services the individual appellees performed for Tribe diverted business from SPS and will likely cause unknown damages.

The individual appellees assert that these allegations are within the TCPA because they implicate the individual appellees' exercise of the right of association. The applicable TCPA provision defined the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Former Tex. Civ. Prac. & Rem. Code § 27.001(2);[7] *Elite Auto Body LLC v. Autocraft*

---

[7] Current code section 27.001(2) omits "a communication between individuals who" from the former definition and adds the italicized phrase in following, now defining the association right as meaning "to join together to collectively express, promote, pursue, or defend common interests

12

*Bodywerks, Inc.*, 520 S.W.3d 191, 197 (Tex. App—Austin 2017, pet. dism'd). In *Grant*, this Court concluded that the TCPA applied to allegations that persons breached a non-compete agreement by misappropriating confidential information and proprietary information, using that information to compete directly and unfairly with a plaintiff, soliciting and employing the plaintiff's employees, and interfering with and disrupting the relationship between the plaintiff and its employees and independent contractors. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 880-81 (Tex. App.—Austin 2018, pet. denied). This Court concluded that the claims in *Grant* were based on, related to, or in response to the defendants' exercise of the right of association through communications between defendants who had joined together to pursue a common interest in employment with a competitor. *Id.* at 881; *see also Elite*, 520 S.W.3d at 879.

The claims in this case are like those in *Grant* and are within the reach of the TCPA. The communications allegedly used to solicit others to switch from SPS to Tribe are an exercise of the right of association as the makers sought to express, promote, pursue, or defend the common interest of working and doing business together. *See Grant*, 556 S.W.3d at 880-81. The sharing and using of confidential information to facilitate those business relationships are similarly exercises of the right of association. *Elite*, 520 S.W.3d at 205; *Grant*, 556 S.W.3d at 881. Appellees have sufficiently shown that SPS's breach-of-contract claims are based on, related to, or in response to the communications made in furtherance of appellees' alleged exercises of the right of association under the applicable definition in joining and pursuing business in competition with SPS while using allegedly confidential and proprietary information from SPS.

---

*relating to a governmental proceeding or a matter of public concern.*" Tex. Civ. Prac. & Rem. Code § 27.001(2) (emphasis added).

13

SPS did not allege contract claims that relate solely to non-communications. Though some of the alleged breaches could involve actions rather than communications, SPS's breach claims based on those actions are nevertheless based on, related to, or in response to communications between individuals who joined together to collectively express, promote, pursue, or defend the alleged common interest in joining Tribe in its business interests. *See* former Tex. Civ. Prac. & Rem. Code § 27.001(2). SPS does not claim, for example, that appellees took its confidential information in silence and solitude and merely deprived SPS of that information by hiding or destroying it. SPS's breach claims rely on the impermissible use of that information as or in support of communications among the appellees or SPS's customers to perform services for Tribe allegedly to divert business from SPS to its detriment. SPS's allegations go beyond the action of taking the information and are based on, relate to, or are in response to at least appellees' exercise of the right of association.

SPS invites this Court to revisit its holding in *Elite* based on the 2019 amendments to the TCPA, arguing that these amendments show that the Legislature's intended scope of the TCPA excludes the claims made here. SPS specifically relies on 2019 amendments that exclude claims based on the CNCA and the Texas Uniform Trade Secrets Act. *See* Tex. Civ. Prac. & Rem. Code § 27.010(a)(5)(A), (B). SPS acknowledges that an amendment to a statute applies prospectively unless it is expressly made retroactive and acknowledges that this amendment is expressly inapplicable to cases filed before September 1, 2019.[8] *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11-12, 2019 Tex. Gen. Laws 684, 687. We look at the plain language of the applicable statute and give little weight to amendments in interpreting the prior law. *Pruett*

---

[8] *See* Tex. Gov't Code § 311.022; *State v. Fidelity & Deposit Co. of Md.*, 223 S.W.3d 309, 312 (Tex. 2007); *In re J.J.*, 276 S.W.3d 171, 176 (Tex. App.—Austin 2008, pet. denied).

14

*v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 454 (Tex. 2008).  We are constrained to construe the statute as it existed, to apply the applicable law as written—not as it would later be written— absent the Legislature making the law retroactively applicable.  *Hegar v. American Multi-Cinema, Inc.*, 605 S.W.3d 35, 44 (Tex. 2020).  We are not presented with and do not find a basis on which to conclude that the amendments merely clarify the original intention of the language of the TCPA.

The TCPA applies to the breach-of-contract claims based on the implication of the right of association.

### B.      SPS did not make a prima facie case for breach of contract.

SPS alleged that the individual appellees had valid, enforceable agreements with MCF and that SPS is the assignee of the agreements.  These agreements forbade the individual appellees to disclose SPS's confidential information or to compete with SPS for a specified time.  SPS alleged that appellees breached their agreements by soliciting customers, vendors, and/or employees away from SPS and by using SPS's confidential information to do so.  SPS alleged that the confidential information and trade secrets include financial data, general business strategy, sales and marketing strategies, sales reports, current and prospective customer lists, as well as specific development, customer information, status of all active and prospective development strategies and lists, company innovations, and additional confidential information and trade secrets that would not have been available to the individual appellees save and except for employment with MCF and SPS.  SPS contends that the individual appellees performed services for Tribe, both before and after they terminated their SPS employment, that were designed to and did divert business from SPS.  Further, SPS alleged that appellees used its confidential key-personnel contact information to solicit SPS's customer Lexicon away from SPS.  SPS President Harter swore in his affidavit that, as a result of these alleged breaches, SPS lost 90% of its monthly gross revenue,

15

including its business relationship with Lexicon due to appellees' solicitation. SPS contends that it has suffered and is in danger of suffering immediate and irreparable harm with damages to be incurred in an unknown amount.

We will focus on the breach and damages issues. The pleadings alone do not supply clear and specific evidence to establish a prima facie case on every element of the cause of action. *See Lipsky*, 460 S.W.3d at 591.

While Harter can plainly have personal knowledge of who SPS's customers are and are not, his affidavit does not show a basis for his alleged knowledge that appellees solicited Lexicon and that Lexicon is a customer of Tribe or any other appellee. SPS correctly notes that the trial court overruled all of appellees' objections to its evidence. However, the overruling of the objections does not relieve us of our obligation to examine the adequacy of the evidence presented to comprise the required prima facie case. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Tex. R. Evid. 602. An affidavit showing no basis for personal knowledge is legally insufficient. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *cf. Roels v. Valkenaar*, No. 03-19-00502-CV, 2020 WL 4930041, at *2 (Tex. App.—Austin Aug. 20, 2020, no pet.) (mem. op.) (citing *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 715-16 (Tex. 2016) (self-serving, conclusory hearsay in plaintiff's affidavit was not "clear and specific evidence" of falsity element of defamation claim)).

The chief allegations in Harter's affidavit concerning the breach are that two appellees briefly messaged concerning possibly leaving, that there was an unusual amount of download activity of internal information before they departed in March 2019, that appellees left

16

SPS, and that Lexicon, a customer Ferraro and Larson were primarily responsible for, also left SPS. In the November 2018 message exchange, Li states that Wilbourn reported that SPS sales workers were calling him to get a job and that Wilbourn said he did not want to step on SPS's toes. Li stated that he told Wilbourn to take anyone who wants to go. Li stated that he was going to tell MCF's CEO Rose about the sales workers calling other companies, but Larson told Li not to mention it. This exchange does not show any breach of contract. Harter's assertion that an unusual amount of information about Lexicon was downloaded from MCF's database before March 2019 does not show that appellees took it away from SPS. Moreover, his affidavit does not show any basis for a finding that appellees caused SPS's loss of revenue by working for a competitor, using confidential information, or taking any customers.

Even if SPS sufficiently showed that the individuals breached valid contracts that bar them from working for a competitor, SPS has not shown that such breaches caused SPS's damages. Without evidence on this key element of the cause of action, SPS has not carried its burden to make a prima facie case on this claim and defeat the motion to dismiss its breach-of-contract claims.

## IV.     Misappropriation of trade secrets

SPS alleged that it owns confidential information such as development, tactics, business strategies, and profitability information concerning its business that provide it a competitive advantage. SPS contends that the information provides economic value from being not generally known, and that SPS has taken reasonable measures to protect the secrecy of the information. SPS alleged that individual appellees had access to and learned the confidential information and trade secrets that they would not have gained but for their work for SPS. It further

alleged that the individual appellees' work for Tribe required them to improperly use or disclose SPS's trade secrets without SPS's authorization to the detriment of SPS in several different ways., including interference with its business relationships.

Misappropriation of trade secrets is shown by proof (1) that a trade secret existed; (2) that the trade secret was acquired through a confidential relationship; (3) that the defendant used the trade secret without authorization from the plaintiff; and (4) that the owner sustained damages. *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 744 (Tex. App.—El Paso 2013, no pet.); *see also AHS Staffing, LLC v. Quest Staffing Grp., Inc.*, 335 F.Supp.3d 856, 862 (E.D. Tex. 2018). A trade secret is any formula, pattern, device, or compilation of information that is used in one's business and gives that business an opportunity to obtain an advantage over competitors who do not know or use it. *Avera v. Clark Moulding*, 791 S.W.2d 144, 145 (Tex. App.—Dallas 1990, no writ); *see also* Tex. Civ. Prac. & Rem. Code § 134A.002(6).

Damages in misappropriation cases can take several forms, including the value of the plaintiff's lost profits, the defendant's actual profits from the use of the secret, the value a reasonably prudent investor would have paid for the trade secret, the development costs the defendant avoided by the misappropriation, and a reasonable royalty. *Southwest Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710-11 (Tex. 2016).

A.      **The TCPA applies to SPS's misappropriation-of-trade-secrets claim.**

As with its breach-of-contract claim, SPS's misappropriation claim is based on, relates to, or is in response to the appellees' exercise of their rights of association. SPS alleged damages from appellees' use and disclosure of the trade secrets in their collective work at Tribe

intended to injure SPS. Disclosure of information inherently requires communication of that information to the disclosee. SPS's misappropriation of trade secrets claim is based on, related to, or in response to communications between individuals who allegedly joined together to collectively express, promote, pursue, or defend common interests of engaging in business in competition with SPS. *See Grant*, 556 S.W.3d at 880-81.

**B. SPS did not make a prima facie case of misappropriation of trade secrets.**

SPS alleged that the individual appellees had access to, became familiar with, and gained intimate knowledge of its confidential information and trade secrets that they would not have gained had they not worked for SPS. SPS alleged that the confidential information and trade secrets derive their value from not being generally known or ascertainable and that SPS took reasonable measures to protect and maintain the secrecy of the information. SPS alleged that the individual appellees have begun working for Tribe, which requires them to improperly use or disclose SPS's trade secrets. SPS alleged that this unauthorized use has resulted in and will result in irreparable injury and damage to SPS and its existing and future business and goodwill.

The pleadings alone do not supply clear and specific evidence to establish a prima facie case on every element of the cause of action. *See Lipsky*, 460 S.W.3d at 591. We will focus on the third and fourth prongs of the misappropriation claim, which require establishing that the defendant used the trade secrets without authorization and thereby caused damages.

SPS cites its President Harter's affidavit for the following in support of its claim of misappropriation:

- Appellees had access to large amounts of trade secrets.

19

- Larson obtained or downloaded reports like Top 10 Customers, Overall Phone Sales Gross Revenue, Subs by Source, Product, and Lifetime Subscribers in September 2018 and SPS's 2018 and 2019 customer lists in January 2019. Harter described this activity as unusual, noting that there were 19,309 external shares of company documents housed in Google Drive during the week of March 15-19, 2019; this contrasts with 288 such shares during all of April 2019. (Larson's and Toliver's employment, however, allegedly had ended on March 11, 2019.)

- The company accounts of Wilbourn and Toliver were deleted when they left MCF; the deletion of Wilbourn's account a year after his departure was unusual.

- SPS has not been able to locate equipment assigned to Larson, Toliver, and Ferraro.

- SPS lost 90% of its monthly gross revenue, including its business relationship with Lexicon.

In its brief, SPS asserts that its losses or revenue and/or the custom of Lexicon were "presumably to Tribe Builders."

This presumption of a critical element is not supported by clear and specific evidence. SPS must establish by clear and specific evidence a prima facie case that appellees took and used the trade secrets and that the use of the trade secrets caused damages. Though SPS alleged and Harter avers that appellees used the trade secrets to solicit Lexicon to Tribe and broadly diminish SPS's revenues, there is no basis for Harter's assertion of personal knowledge of a Tribe contract with Lexicon or any other existing or former customer of SPS. There is no evidence that any appellee used any trade secret without authorization from the plaintiff, nor is there evidence that links an appellee's use of the trade secrets to the detriment of SPS. Parties must provide clear and specific evidence to support their claims. The fact that SPS lost revenue after the individual appellees left SPS does not comprise a prima facie case that appellees caused the losses through the use of SPS's trade secrets.

We conclude that the trial court did not err by concluding that SPS did not under the TCPA establish by clear and specific evidence a prima facie case of misappropriation of trade secrets.

## V.    Tortious interference with business relations

SPS complains of interference with existing and prospective business relations. The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Financial Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Trowe v. Johnson*, No. 03-19-00953-CV, 2021 WL 3624709, at *7 (Tex. App.—Austin Aug. 17, 2021, no pet. h.) (mem. op.).  To prevail, the plaintiff must present evidence that the defendant interfered with a specific contract and that some obligatory provision of the contract has been breached. *RigUp*, 613 S.W.3d at 190.

21

**A.      The TCPA applies to SPS's tortious-interference claims.**[9]

SPS alleged that Wilbourn founded Tribe and approached SPS's employees on whom SPS relied to provide its services.  SPS alleged that Wilbourn and Tribe encouraged SPS's employees to quit SPS, disregard their post-employment obligations, and join Tribe in attempting to take business away from SPS.  SPS alleged that some of the solicited employees left SPS and joined Tribe, competing with SPS, and damaging SPS.  SPS contends that it lost its investment in employee training and its ability to serve its customers timely because SPS's employees left because of Wilbourn's and Tribe's solicitations.

Like the contract and misappropriation claims, these claims are within the TCPA based on the appellees' exercise of their right of association.  SPS alleged that the appellees conspired to achieve their objective, which requires communication between individuals to pursue their common interest.  Wilbourn's and Tribe's encouragement and solicitation of SPS's workers are communications.  SPS's tortious interference claims are based on, related to, or in response to these communications between individuals who join together to collectively express, promote, pursue, or defend common interests.  *Grant*, 556 S.W.3d at 880-81.

**B.      SPS's prima facie case on tortious interference with contractual relationships.**

SPS claimed that various appellees tortiously interfered with its contractual relationships, both existing and potential.  Based on our conclusions that the commercial-speech exemption excludes SPS's tortious-interference claims concerning its relations with customers

---

[9] Because SPS did not claim tortious interference by Larson, Toliver, or Ferrara and because we earlier concluded that the tortious-interference claim against Wilbourn and Tribe relating to SPS customers is subject to the commercial-speech exemption, our analysis is limited to SPS's claim that Wilbourn and Tribe tortiously interfered with SPS's contractual relations with its employees and contractors.

from the scope of the TCPA, we will limit our discussion to interference by Wilbourn and Tribe with contractual relationships with SPS's employees.

### 1. Existing relationships

SPS alleged that Wilbourn and Tribe approached SPS's employees on whom SPS relied for services and used its confidential information to solicit one of SPS's primary customers. SPS alleged further that Wilbourn and Tribe asked and encouraged SPS's employees to terminate their employment with SPS, disregard their post-employment obligations, and join Tribe in efforts to take away SPS's business. SPS also alleged that Wilbourn and Tribe conspired to raid SPS's employees, customers, and vendors by assisting and encouraging the solicitation with knowledge of the contracts that precluded solicitation and sharing of confidential information. SPS contends that it was damaged by the loss of employees that it had expended resources to train, that the loss of employees hampered its ability to provide its customers service, and that Wilbourn and Tribe benefitted from SPS's confidential information to SPS's detriment. The pleadings alone do not supply clear and specific evidence to establish a prima facie case on every element of the cause of action. *See Lipsky*, 460 S.W.3d at 591.

We will focus on the second element requiring a willful and intentional act of interference with the contract. In his affidavit, SPS President Harter avers that Larson and Toliver left SPS because of Wilbourn and Tribe's interference, and that they persuaded Ferraro and several other MCF employees to leave SPS. Harter asserted that Wilbourn recruited SPS's employees. As discussed above, Harter cited the text of a November 2018 exchange between Li and Larson on an MCF account in which Li states that Wilbourn reported that SPS sales workers were calling him to get a job and that Wilbourn said he did not want to step on their toes; Li stated that he told Wilbourn to take anyone who wants to go. Li stated that he was going to tell MCF's chief

23

executive officer Dan Rose about the sales workers calling other companies, but Larson told Li not to mention it. If anything, this exchange shows Wilbourn (and Tribe) trying to *avoid* interfering with SPS's/MCF's relations with its employees.[10] Crucially, Harter's affidavit does not demonstrate that his role as SPS's president conferred on him personal knowledge of any recruiting efforts by Wilbourn, Tribe, or others. An affidavit showing no basis for personal knowledge is legally insufficient. *Kerlin*, 274 S.W.3d at 668; Tex. R. Evid. 602. Harter's affidavit does not demonstrate a basis for the crucial evidence of the alleged interference with SPS's employees' contracts.

SPS contends that two statements in Wilbourn and Tribe's first amended motion to dismiss under the TCPA that Tribe "hired such [former] employees" of SPS supports a prima facie case of interference. However, these statements do not allege specific individuals or contracts, nor do they admit an act of willful and intentional act of interference with a contract with these unnamed employees.

The trial court did not err by concluding that SPS did not establish a prima facie case that appellees tortiously interfered with any of SPS's existing contractual relationships with employees.[11]

### 2. Potential relationships

SPS claimed that Wilbourn and Tribe tortiously interfered with prospective contractual relations concerning only customers, not employees. Because above we decided that

---

[10] Li and Larson worked for MCF at the time.

[11] Because we conclude that SPS failed to make a prima facie case on this issue, we need not address appellees' contentions that SPS had no valid contracts with appellees with which Tribe and Wilbourn could allegedly interfere.

24

application of the commercial-speech exemption required reversal of the dismissal concerning interference with prospective customers, we need not address whether SPS established a prima facie case on this claim.

**VI.    Trial court did not abuse its discretion by declining to allow limited discovery.**

SPS contends that the trial court erred by not allowing SPS to conduct limited discovery under the TCPA.  In its September 12, 2019 response to the motions to dismiss, SPS requested an order compelling appellees to respond discovery requests SPS propounded June 24, 2019.  The filing of a motion to dismiss under the TCPA automatically suspends all discovery until the court rules on the motion.  Tex. Civ. Prac. & Rem. Code § 27.003(c).  However, the trial court may allow specified and limited discovery relevant to the motion upon a showing of good cause.  *Id.* § 27.006(b).  We review the denial of discovery for an abuse of discretion.  *Buzbee*, 616 S.W.3d at 30.  A court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules or principles, and when it renders an arbitrary and unreasonable decision lacking support in the facts or circumstances of the case.  *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011).

The following filings and events in 2019 are relevant to the discovery decision:

- May 15    SPS files suit.

- June 24    SPS sends requests for production to appellees.[12]

- July 23    Tribe and Wilbourn file original TCPA motion to dismiss.

- July 26    Ferraro, Larson, and Toliver file original TCPA motion to dismiss.

---

[12] SPS states that it sent discovery requests to "Defendants," though only requests sent to Tribe, Ferraro, Li, and Wilbourn are in the clerk's record attached to SPS's response to Wilbourn and Tribe's motion to dismiss.

- July 29    Wilbourn and Tribe file amended TCPA motion to dismiss.

- Aug. 9    Wilbourn and Tribe send notice of hearing on their amended TCPA motion to dismiss; hearing set for September 16.

- Aug. 30    Ferraro, Larson, and Toliver send notice of hearing on their TCPA motion to dismiss; hearing set for September 16.

- Sept. 12    SPS files responses to motions to dismiss, including request for an order compelling appellees to respond to SPS's discovery requests.

  SPS alternatively requests that, to the extent the court determines the TCPA applies to any of SPS's claims and concludes that SPS did not establish a prima facie case on that claim, the court grant SPS the opportunity to conduct limited discovery with respect to any claim in which a prima facie case is lacking.

- Oct. 9    Trial court signs orders granting motion to dismiss under the TCPA. Trial court dismisses claims with prejudice, and orders hearing on attorney's fees and sanctions under the TCPA.

- Dec. 10    Appellees send notice of attorney's fees hearing set for December 18.

- Dec. 11    SPS files motion for reconsideration of rulings on motions to dismiss.

- Dec. 31    Trial court signs order awarding attorney's fees to appellees, but assesses no sanctions; orders filed January 8, 2020.

SPS asserts that it requested production of documents and information in appellees' possession such as that related to SPS and MCF customers, to appellees' sales (including identities of employees, purchasers, and products sold), and to appellees' communications with SPS's employees, contractors, vendors, or customers, as well as production of resumes, letters of employment and job descriptions for Tribe's employees, including individual appellees.

SPS contends that the trial court abused its discretion and was unfair to dismiss all of SPS's claims without requiring appellees to respond to the discovery requests. It contends that the TCPA is intended to safeguard First Amendment rights while protecting the rights of persons

to file meritorious lawsuits for demonstrable injury. *See In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op.). SPS argues that the limited discovery could have supplemented its circumstantial evidence on its claims with additional evidence directly relevant to its claims.

Appellees first argue that SPS did not preserve the issue for appeal because it did not obtain a ruling on the issue. *See Drew v. Belver*, No. 04-20-00483-CV, 2021 WL 3518541, at *3 (Tex. App.—San Antonio Aug. 11, 2021, no pet. h.) (mem. op.) (party does not preserve for appeal issue of denial of limited discovery when it neither obtains ruling on motion nor objects to failure to rule). The trial court never expressly ruled on the request for limited discovery, but an implicit denial of a motion preserves error for appellate review. *See* Tex. R. App. P. 33.1(a)(2)(A). We conclude that, by dismissing the claims without allowing discovery, the trial court implicitly denied the request for discovery—thereby preserving the issue for appeal.

Appellees also argue, as the Fourteenth District Court of Appeals has concluded, that the TCPA "does not authorize the trial court to permit discovery *after* concluding that the plaintiff's evidence falls short." *Buzbee*, 616 S.W.3d at 30 (quoting *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 69 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (rev'd in part on other grounds)) (emphasis in original). The *Buzbee* court relies on the TCPA's directive that a trial court "shall dismiss" the action if the plaintiff fails to meet the burden to establish a prima facie case. *Id.* Though the TCPA does not expressly require immediate dismissal, there is other support for the *Buzbee* court's conclusion in the TCPA provision that, if the court allows discovery under section 27.006(b), it may extend the period for holding a hearing by up to 60 days beyond the original 60-day period. Tex. Civ. Prac. & Rem. Code § 27.004. Implicit is that any discovery must take place before the hearing on the motion. *See id.* Again, the TCPA does not prohibit trial

27

courts from, for example, suspending a hearing on the motion to dismiss to permit discovery and reconvening within the statutorily permissible period. Because we conclude on other grounds that SPS failed to show an abuse of discretion, we need not decide whether to adopt the *Buzbee* court's conclusion that the TCPA categorically forecloses all trial courts from permitting limited discovery after concluding that the plaintiff has failed to establish a prima facie case.

The only basis presented to the trial court to find good cause to permit discovery is a trial court's finding on consideration of the motions to dismiss that SPS failed to carry its burden to establish a prima facie case for each element of its claims. SPS made this motion on September 12, 2019—several weeks after responses to its discovery requests were due and appellees filed their motions to dismiss in late July, and four days before the hearing on the motions to dismiss. SPS did not present an argument as to why it needed an exception to the standard prohibition of discovery to obtain evidence on that subject matter; instead, SPS relied on the trial court to find the weaknesses in SPS's case and specify the scope of discovery. As a result, SPS's only argument for good cause to allow discovery is conditioned on a finding that it failed to provide sufficient evidence to defeat the motion to dismiss. We conclude that the trial court did not abuse its discretion by implicitly concluding that SPS's failure to establish a prima facie case did not constitute good cause to upend the statutory default of suspending discovery.

## VII. Remand of attorney's fees issue.

The TCPA requires a trial court to award "reasonable attorney's fees" to a successful movant. Former Tex. Civ. Prac. & Rem. Code § 27.009(a)(1); *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). The determination of reasonableness "rests within the court's sound discretion." *Sullivan*, 488 S.W.3d at 299; *Hawxhurst v. Austin's Boat Tours*,

28

550 S.W.3d 220, 232 (Tex. App.—Austin 2018, no pet.). Because our review has reversed the trial court's order in part and remands the cause, we also reverse the attorney's fees award to enable the trial court to revisit the award in light of our ruling and any further proceedings.

## CONCLUSION

Concluding that the trial court erred in part in its order granting appellees' motions to dismiss, we reverse the dismissal of SPS's claims that Tribe and Wilbourn tortiously interfered with SPS's existing and potential contractual relationships with customers. We remand those claims for further proceedings. We vacate and remand the award of attorney's fees for reconsideration in light of the results of this appeal as well as any subsequent proceedings. We affirm the dismissal in all other respects.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed in Part, Reversed and Remanded in Part, Vacated and Remanded in Part

Filed: November 19, 2021